BORING's Lessee vs. SINGERY.

ERROR to the General Court. In this case there was a writ of *procedendo* from the late court of appeals, directing a new trial of an action of *ejectment*, (which had been tried in the general court at October term 1799,) for a tract of land called *Boreing's Habitation Rock*, lying in *Baltimore county*, containing 300 acres of land. [See 4 *Harr. & M'Hen.* 398.] The defendant took defence on warrant for all that part of *Boreing's Habitation Rock*, which is included in *Singery's Trouting Streams*, according to his locations thereof on the plots returned in the cause.

1. The plaintiff, at the new trial at October term 1805, read in evidence the patent of *Boreing's Habitation Rock*, granted to *Ezekiel Boreing*, the lessor of the plaintiff, on the 24th of April 1795, for 300 acres of land more or less. The defendant produced a grant issued to him the 20th of April 1775, for the tract called *Singery's Trouting Streams*, for which he took defence. The plaintiff then produced the original certificate out of the land office for the land called *Singery's Trouting Streams*, dated the 30th of September 1770; and gave evidence by *James Calder*, that he was surveyor of *Baltimore county* when the original certificate was returned to the land office, upon which the patent for *Singery's Trouting Streams* was granted; and that the certificate, on which the patent issued, was not made out or signed by him, or by his authority; that the original certificate, as entered upon his book of surveys, contained no call to the beginning trees of the tract of land called *Petticoat's Loose*, nor was there any such call in the certificate as made out by him, or under his authority. That the certificate, as made out by him to be returned to the land office, described the land called *Singery's Trouting Streams* as "beginning at two bounded white oaks standing between two barren hills at the end of the last line of a tract of land called *Merryman's Mountain*, (included,) and about west nine perches from *George's Run*, and running thence," &c. (nineteen courses without any calls,) "and then with a straight line to the beginning, containing 178 acres," &c. as taken from his original book of surveys. The plaintiff produced this book in court, and offered to read it to the jury. He further offered to prove by *Calder*, that he had examined the ori-

A surveyor's original book of surveys, and his parol testimony, admitted by the general court, in an action of *ejectment*, as competent evidence to prove that a certificate of survey returned to the land office, was forged.

The general court refused to direct the jury, that it is not competent in a court of law to give evidence to the jury, or to go into any parol examination of the surveyor, or his books, to vacate a grant, or to prove that the certificate of survey returned to the land office, as a foundation for the grant, was forged or fraudulent, and not made out by him or his authority.

The proprietary instructions, requiring a survey to be made of reserved lands, &c. read in evidence.

Depositions returned under a commission issued to *Pennsylvania*, to take testimony in the cause, were not permitted by the general court to be read in evidence, it not appearing, by the return of the commissioners, that they had given any notice, or that proper notice had been given.

Depositions similarly taken were not permitted to be read in evidence, although offered in evidence by the opposite party.

1809

Boreing
vs
Singery

ginal certificate of *Singery's Trouting Streams*, with the entry on his book, before he delivered and signed the original certificate for the land office. By which evidence the plaintiff offered to prove to the jury, that the certificate of *Singery's Trouting Streams*, returned to the land office, and on which the patent issued, was a forgery, and could not operate to pass more land than was contained in the certificate signed by *Calder*. The defendant then offered evidence, that no other certificate of *Singery's Trouting Streams*, except the one on which the patent issued to the defendant, was ever returned to the land office. He also offered in evidence, the certificate returned to the land office, with the endorsements thereon, and the aforesaid patent. [*See them set out in 4 Harr. & M'Hen. 398.*] He also offered evidence, that *Calder* never did make out a certificate for *Singery's Trouting Streams*, from the entry made in his book; and to prove that a certificate for *Singery's Trouting Streams* never was examined with the said entry, he offered in evidence, by *Calder*, that he did not begin to survey lands in the *reserves* of *Baltimore* county before the 24th of November 1770, and that he would not have inserted a certificate in his book of an elder date than the 24th of November 1770, if he had taken notice of such a date. He also offered to prove, that there are certificates of surveys, contained in the said book, bearing date since the 4th of July 1776. He also offered in evidence the proprietary instructions to *Robert Eden*, *Daniel Dulany*, and *John Morton Jordan*, dated the 30th of June 1769(a), requiring that they should forthwith, if necessary, cause an exact survey and return to be made of the lord proprietary's reserved lands and manors, &c. He also offered evidence, that *Calder* was appointed to survey the lands in the instructions mentioned; and to prove that *Calder's* authority ceased before the 4th of July 1776, offered in evidence the declaration of independence. He also offered in evidence, that the following part of the entry in the said book, and no more, is in the handwriting of *Calder*, to wit: "Amended for *Christian Singery*, a tract beginning at two bounded white oaks, standing between two barren hills at the end of the last line of a tract called *Merryman's Mountain,* (included,) and about west nine perches from *George's*

(a) Entered in the Council records, J. R. folio 241, &c.

Run, and running then N 87 W 22 ps. S 47 W 96 ps." He also offered in evidence, by *Calder*, that the latter part of the said entry is not in his handwriting, and that he did not know in whose handwriting it was, but supposed it to be the handwriting of a man named *Norris*, one of his deputies. That the land included in the courses taken from the said entry, is in the *reserves* of *Baltimore* county; and that the entry made in his book, was made after the 4th of April 1775, but on what day he knew not. The plaintiff further offered evidence, by *Calder*, that the reason he recorded a certificate in his book, bearing date the 30th of September 1770, was from an oversight in his not particularly attending to the date of the certificate, and that he would have corrected the erroneous date had it particularly occurred to him. That he had a number of deputies, who were authorised by him to record certificates in his book, after they had been examined and signed by him. The defendant objected to the plaintiff giving any of the evidence offered by him, for the purpose for which it was offered.

*Shaaff*, for the Defendant, stated two objections to this testimony—1. Because the book was made without authority, and the entry was not made by *Calder* himself, nor examined by him, and from his own proof was not made until after the patent issued to the defendant. 2. Because it is contrary to the grant, and the grant cannot be held void in this court. He cited *Twyne's* case, 3 *Coke*, 80. 13 *Vin. Ab.* 519, 527. 2 *Com. Dig.* 575. 2 *Bac. Ab.* 602. *Lane*, 105, (argt.) *Upton vs. Basset, Cro. Eliz.* 445. *Bull. N. P.* 250 *Stat.* 27 *Eliz. ch.* 4. *Carvill's Lessee vs. Griffith*, 1 *Harr. & M'Hen.* 297. *Maxwell's Lessee vs. Lloyd*, 1 *Harr. & M'Hen.* 212. *Spalding's Lessee vs. Reeder*, 1 *Harr. & M'Hen.* 137. *Hammond, et al. Lessee vs. Sheredine*, 4 *Harr. & M'Hen.* 420; and *Webb's Lessee vs. Beard*, 1 *Harr. & Johns.* 349.

*Martin*, (Attorney-General,) and *T. Buchanan*, for the Plaintiff, were stopped by the court.

CHASE, Ch. J. (sitting alone.) This question, he said, had already been decided in this case at the former trial at October term 1799, when there was a fuller court. He considered himself bound by that decision, even if he

1809.

Boreing
vs
Singery

thought differently now. He therefore permitted the evidence to be read to the jury, being of opinion that the fact, whether the certificate was forged or not, was a material fact in this cause, and that the evidence offered by the plaintiff was competent and admissible evidence to prove that fact; and that the credit of the witness, and of the surveyor's book referred to, were subjects within the province of the jury, and proper for their consideration upon the whole of the case. The defendant excepted.

2. The defendant then, in addition to the facts before stated, gave in evidence, that the locations on the plots made on the part of the defendant are true, as by him located, and contained truly the land granted to him in 1775. And offered evidence to prove, that the land included in the grant comprehends the land granted to the lessor of the plaintiff, called *Boreing's Habitation Rock*, for which this suit is brought. He also read in evidence an office copy of the record and proceedings then depending in the court of chancery, between the lessor of the present plaintiff and the defendant, on a bill exhibited expressly to vacate the defendant's grant. And read in evidence the records and proceedings in the council chamber, by which a commission was created for the purpose of selling certain lands of the then Lord Proprietary of *Maryland*, which is herein before referred to, dated the 30th of June 1769; and proved, that the lands claimed by him in virtue of his patent, were claimed by him under a purchase from the persons acting under that commission, and were part of the private estate of the Proprietary, and not liable to be affected by the ordinary proceedings and usual practice of the land office. He also proved that *John Clapham*, whose name was to the receipt of the consideration money endorsed on the certificate of the land called *Singery's Trouting Streams*, stating that he had, on the 19th of April 1775, received of the defendant the sum of £71 4 0 sterling for the purchase money of that land, was then acting as clerk to the said commission. The defendant then prayed the opinion and direction of the court to the jury, that it is not competent in a court of law for the plaintiff, under the circumstances of this case, to give any evidence, or go into any parol examination of the surveyor, or his books, to vacate the defendant's grant, or to prove that the

certificate returned to the land office, as a foundation for that grant, was forged or fraudulent, and not made out by him or his authority.

CHASE, Ch. J. refused to give the direction prayed. The defendant excepted.

3. The defendant then offered in evidence the commission which issued at his instance out of this court, on the 13th of September 1799, to *Huntingdon* county, in the state of *Pennsylvania*, to take the testimony of witnesses in this cause, with the depositions taken under it. The return to this commission, after setting forth the meeting of the commissioners, and their having taken the deposition of a witness in answer to certain interrogatories, concludes by the commissioners certifying, that "the foregoing interrogatories were taken at the instance of *Joshua Stevenson*, on his asserting that the plaintiff had knowledge of his coming, and intention of having this commission executed." To the admissibility of this evidence,

*T. Buchanan*, for the Plaintiff, objected, because there had not been *legal notice* to the plaintiff of the time of executing the commission.

*Key*, for the Defendant, cited *Norwood vs. Owings*, *(ante* 98,) where this court decided that notice was not necessary in executing foreign commissions.

CHASE, Ch. J. This case is not similar to that of *Norwood vs. Owings*. In that case the commissioners certified that they had given notice; but in this case it does not appear, by the return of the commissioners, that they had given any notice, or that proper notice had been given. The court are of opinion that the commission and return are not legal evidence, nor any part thereof. The defendant excepted.

4. The plaintiff then offered to read in evidence the commission, with the testimony returned with it, which had been executed and returned at the instance of the defendant, under a commission issued from this court to *Fayette* county in *Pennsylvania*, on the 14th of March 1798, but which the defendant refused to read. The return is as follows: "In obedience to a commission to us directed by the hon'ble the judges of the general court.

for the western shore of *Maryland*, we met at the house of *James Gregg*, in *Fayette* county, *Pennsylvania*, on the 1st of October 1798, and after taking the oath directed, we appointed *J. M.* clerk, who took the oath directed in the said commission. We then put the following interrogatories unto *Daniel Goodwin*, of the county aforesaid, being first duly sworn on the Holy Evangely of Almighty God, viz." [*Then follow the interrogatories and answers.*] "The foregoing interrogatories were taken at the instance of *Joshua Stevenson*, on his asserting that Mr. *Cooke*, attorney for the plaintiff, had knowledge of his coming, and intention of having this commission executed, and consented thereto. Given under our hands and seals," &c. Signed and sealed by the commissioners; and certificates that the commissioners and clerk had taken the oaths annexed to the commission to be by them respectively taken. The plaintiff also offered to read in evidence the deposition of *Daniel Goodwin*, named in the same commission, who at the former trial attended court, and his deposition taken in the city of *Annapolis* on the 23d of May 1799, before a justice of the peace, &c. by consent of parties, to be read at the trial of this cause, so far as the same contained legal testimony.

CHASE, Ch. J. This commission is liable to the same objection as the other commission, and the court refuse to admit it to be read, being of opinion that the commission was not legally executed; and that the deposition taken in *Annapolis*, by consent of parties, was taken for the purpose of impeaching or counteracting the deposition taken under the commission. The plaintiff excepted; and the verdict and judgment being for the defendant, the plaintiff brought a writ of error to this court.

The cause was argued on the bill of exceptions taken on the part of the *plaintiff*, being the last bill of exceptions herein stated, before BUCHANAN, NICHOLSON, GANTT, and EARLE, J. by

*T. Buchanan*, for the Plaintiff in error; and by
*Shaaff*, for the Defendant in error.

JUDGMENT AFFIRMED.